**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Joseph GRAY, Appellant.**

Superior Court of Pennsylvania.

Submitted July 23, 2001.

Filed Sept. 5, 2001.

John J. Sobota, Wilkes–Barre, for appellant.

David W. Lupas, Asst. Dist. Atty., Wilkes–Barre, for Commonwealth, appellee.

Before: CAVANAUGH, JOHNSON, and HESTER, JJ.

JOHNSON, J.

¶ 1 Joseph Gray appeals from the judgment of sentence entered following his conviction on several firearms and drug charges. Gray challenges the trial court's order denying his request that certain evidence be suppressed at trial. After study, we conclude that the trial court erred in refusing to suppress evidence obtained following the arresting officer's unlawful pursuit of Gray. Accordingly, we reverse the judgment of sentence and the order denying the suppression of certain evidence and remand for further proceedings consistent with this Opinion.

¶ 2 The underlying facts in this case arise from a dispatch instructing Officers Timothy Jacobs and Sean Mrochko of the West Hazelton Police Department to investigate a report of a Black male wearing a red shirt allegedly brandishing a gun. The report came from an individual at the local fire department. Initially, the officers contacted the fire department to obtain more information regarding the report. The informant told the police that someone had come to the firehouse and reported the presence of a man brandishing a firearm. The informant also gave the police a description and location of the suspect as it was relayed to him. The police then drove to the reported location, looked through an apartment window, and saw Gray wearing a red shirt, sitting at a table with a gun in front of him. The police then knocked and identified themselves. Upon seeing Gray walk towards the door, with the butt of the gun now hanging from his right pocket, Officer Jacobs produced his sidearm, pointed it at the door and directed Gray to open the door with his hands up. Gray responded by retreating to the rear of the building. The police broke through the door and subsequently apprehended Gray. In addition to the gun, the police discovered cocaine and marijuana on the kitchen table. The Commonwealth charged Gray with Person not to Possess Firearms, Firearm not to be Carried without a License, Possession of a Firearm with Altered Manufacturer's Number, Possession with Intent to Deliver Controlled Substances, and two counts of Possession of a Controlled Substance. *See* 18 Pa.C.S. §§ 6105, 6106(a)(1),

6110.2(a), 35 P.S. § 780–113(30), (31), (16) (respectively). Following a bench trial, the trial court found Gray guilty of all charges with the exception of the Firearm not to be Carried without a License and Possession of a Firearm with Altered Manufacturer's Number charges. The trial court subsequently sentenced Gray to an aggregate term of five to twelve years' incarceration. Gray then filed this appeal.

¶ 3 On January 30, 2001, the trial court issued an order directing Gray:

> [to] file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b). The Statement shall include references to specific testimony and/or evidence, if applicable. Additionally, it shall include any rule, statute, or case relied upon by Appellant in support of the allegation of error. The Statement shall be filed on or before February 5, 2001. The Commonwealth of Pennsylvania shall file a response to the Statement of Matters Complained of on Appeal on or before February 15, 2001.

This deadline afforded Gray four business days in which to comply. On February 13, 2001, fourteen days after the entry of the order, Gray filed his 1925(b) statement. The following day, the trial court issued an order declaring its intention not to submit a 1925(a) opinion as a consequence of Gray's "untimely" filing.

¶ 4 Gray presents the following question for this Court's review:

> I. Whether exigent circumstances existed warranting a forcible entry into a residence.
> II. Whether information police received from an unknown male was reliable thereby permitting police to reasonably conclude that criminal activity may be afoot.
> III. Whether police officers['] pursuit of [Gray] while he was inside his residence amounted to an illegal detention and/or search and seizure without probable cause.

Brief for Appellant at 2.

¶ 5 Due to the unusual procedural posture of this case, we shall review the trial court's rationale for failing to file a 1925(a) opinion, before addressing the merits of Gray's claims. "[Although] the scope of a trial court's discretionary powers to deal with the factual circumstances it confronts is broad, it is not unlimited. It necessarily follows that the requirement that appellate courts defer to that exercise of discretion is not without limitation either." *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240, 1244 (1991). Accordingly, an appellate court may assess the propriety of a trial court's exercise of discretion when it is apparent there was an abuse of that discretion. *Id.* A trial court abuses its discretion if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will as shown by the evidence or the record. *See Commonwealth v. Kocher,* 529 Pa. 303, 602 A.2d 1308, 1310 (1992).

¶ 6 Rule of Appellate Procedure 1925(b) states expressly that the trial court may "enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal no later than **14 days** after entry of such order." Pa.R.A.P.1925(b) (emphasis added). Our Supreme Court has stated clearly that "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process." *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 308 (1998). Further, bearing in mind that Rule 1925(b) speaks directly to

the appellant's obligation to file the statement within 14 days, it is reasonable that such party may rely on the language of the rule in fulfilling his or her obligation.

¶ 7 Here, notwithstanding the apparent window of fourteen days provided by the rule, the trial court afforded Gray only four business days to prepare and file a 1925(b) statement. On February 13, 2001, Gray's counsel filed his 1925(b) statement. This was done within fourteen days of the entry of the order. The following day, the trial court filed an order declaring that no issues had been preserved for appellate review and that it would not issue an opinion. Order, 2/13/01. Mindful of Rule 1925's purpose in aiding trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal, we discern no reason why the trial court, with a proper 1925(b) statement before it, could not have identified the issues on appeal and filed a responsive 1925(a) opinion. Moreover, we conclude that there can be no reasonable explanation for the court's failure to afford Gray the fourteen days permitted under our Rules of Appellate Procedure and case law. Therefore, we conclude that the trial court's order giving Gray only four days to file a 1925(b) statement is manifestly unreasonable. Accordingly, we conclude that the trial court abused its discretion in entering its order refusing to file a 1925(a) statement. Furthermore, we conclude that Gray's 1925(b) statement was timely filed and effectively preserved the issues he now raises on appeal. Therefore, we shall address the issues presented. *See Commonwealth v. Ortiz,* 745 A.2d 662, 663 n. 3 (Pa.Super.2000) (where this Court elected not to find waiver where there was no impediment to meaningful review and trial court had opportunity to review appellant issues on appeal).

¶ 8 We begin by observing that all three of the questions presented ultimately ask us to determine whether, under the given circumstances, the trial court erred in refusing to suppress evidence seized during a warrantless entry into Gray's residence and his subsequent detention. Brief for Appellant at 6. Because our disposition relies upon an analysis of the issues presented in Gray's second and third questions, we shall limit our discussion solely to the resolution of those issues.

¶ 9 When reviewing the suppression court's denial of a motion to suppress, we must first ascertain whether the record supports the suppression court's factual findings. *See Commonwealth v. Dangle,* 700 A.2d 538, 539 (Pa.Super.1997). When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *See Commonwealth v. Lynch,* 773 A.2d 1240, 1243 (Pa.Super.2001). We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error. *See Commonwealth v. Perry,* 710 A.2d 1183, 1184 (Pa.Super.1998).

¶ 10 In support of his second and third questions, Gray argues that neither the anonymous tip nor his flight from the police is sufficient to establish a reasonable suspicion that would permit the subsequent chase and detention. Brief for Appellant at 12, 13.

¶ 11 Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before con-

ducting an investigatory stop. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276, 280 (1969). Our Supreme Court has, however, interpreted Article I, Section 8 protection *more broadly* than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. *Compare California v. Hodari D.,* 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), *with Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 776 (1996). Under Pennsylvania law, any items obtained as the result of a pursuit are considered fruits of a seizure. *See generally Matos,* 672 A.2d at 770. Those items may be received in evidence only when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory detention. Id. at 771. "Stated another way, when one 'is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.'" *Commonwealth v. Lynch,* 773 A.2d 1240, 1243 (quoting *Commonwealth v. Wimbush,* 561 Pa. 368, 750 A.2d 807, 810 n. 5 (2000)).

¶ 12 In deciding whether reasonable suspicion exists for an investigatory detention, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. *See Lynch,* 773 A.2d at 1244. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reli-

ability. *See id.* Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. *See Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903, 908 (2000) (noting that "nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion").

¶ 13 While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. *See Wimbush,* 750 A.2d at 811. Such anonymous tips must be treated with particular suspicion. *See Lynch,* 773 A.2d at 1244. Likewise, flight alone does not form the basis for reasonable suspicion. *See Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 677 (1999). A combination of these factors may, however, be sufficient. *See Zhahir,* 751 A.2d at 1157 (noting that suspicious conduct corroborates an anonymous tip); *Cook,* 735 A.2d at 677 (stating that circumstances which alone would be insufficient may combine to show reasonable suspicion).

¶ 14 Our resolution in this matter is guided by Judge Cavanaugh's recent discussion in *Commonwealth v. Lynch,* 773 A.2d 1240. In *Lynch,* as in the case before us, the police received an anonymous report providing a specific description and location of a man allegedly carrying a gun. *See Lynch,* 773 A.2d at 1242. Two officers responded by driving to the location. There they found a group of men standing at the corner. The defendant, like Gray, matched the description given by the unknown informant. After the officers identified themselves and began approaching the group, the defendant ran away. One of the officers pursued the defendant into an alley wherein the defendant turned and pulled a gun from his waistband. The defendant threw the gun and continued his

flight from the officer. Shortly thereafter, the defendant was apprehended.

¶ 15 One of the questions before this Court in *Lynch,* and which is central to this case, was whether an anonymous tip coupled with flight is sufficient to demonstrate a reasonable suspicion to justify the officer's pursuit. *See Lynch,* 773 A.2d at 1245. Upon a survey of recent cases involving anonymous tips coupled with the suspect's flight, we observed that our Supreme Court had occasion to review this scenario in *In re D.M.,* 560 Pa. 166, 743 A.2d 422 (1999), *vacated and remanded sub nom. Pennsylvania v. D.M.,* 529 U.S. 1126, 120 S.Ct. 2003, 146 L.Ed.2d 953 (2000). We noted, however, that the United States Supreme Court vacated our Supreme Court's decision based on its disposition in *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Notwithstanding the fact that the United States Supreme Court vacated the decision in *In re D.M.,* Gray has argued the merits of his case under Article 1, Section 8 of the Pennsylvania Constitution. Accordingly, inasmuch as our Supreme Court's decision delivers an interpretation of this Commonwealth's constitution, our analysis remains guided by its holding in *In re D.M.*

¶ 16 We are also cognizant that this Court has determined in the past, on similar facts, that probable cause existed for an arrest. *See Commonwealth v. Davis,* 418 Pa.Super. 318, 614 A.2d 291 (1992) (concluding that police had probable cause to arrest the defendant where officers: 1) arrived on the scene seconds within receiving an anonymous tip; and 2) saw the defendant through an open door with a gun in his waistband just as he jumped out of his seat). However, our Supreme Court's holding in *In re D.M.* overrides our earlier disposition in *Davis,* and necessarily controls. Moreover, *In re D.M.* instructs us that observations tending to substantiate details offered in an anonymous tip may, nevertheless, be insufficient to establish reasonable suspicion in the absence of factors indicating that the officers suspected criminal activity was afoot. *See In re D.M.,* 743 A.2d at 426. We conclude that such is the case in the present matter.

¶ 17 In *In re D.M.,* and as later adopted by this Court in *Lynch,* the Court concluded that: 1) flight only creates a reasonable suspicion where there is already some suspicious conduct preceding the flight; and 2) even the combination of a detailed description coupled with flight was not sufficient to demonstrate reasonable suspicion. *See* 743 A.2d at 426.

¶ 18 In this case, as in *Lynch* and *In re D.M.,* the police failed to observe any suspicious behavior on Gray's part moments prior to his retreat. On the contrary, the arresting officer admitted that upon looking through the window, he observed Gray sitting at the kitchen table and the gun resting on the table. N.T. Pre–Trial Hearing, 12/15/00, at 72. Prior to Gray's retreat, Officer Jacobs observed *only* that that gun was "hanging out of [Gray's] right pocket." N.T. Pre–Trial Hearing, 12/15/00, at 57, 66–67. Although the presence of the gun further substantiates the information provided in the anonymous tip, it is not, in itself, indicative of criminal activity. Therefore, we conclude that the existence of a detailed anonymous tip followed by the suspect's retreat from the front door of his dwelling place is insufficient to establish a reasonable suspicion that criminal activity was afoot. *See Lynch,* 773 A.2d at 1246; *In re D.M.,* 743 A.2d at 426. Consequently, we conclude that the suppression court erred in refusing to suppress evidence obtained from Gray's unconstitutional seizure.

¶ 19 For the foregoing reasons, we reverse the judgment of sentence and the

order denying suppression of the evidence. This matter is remanded for further proceedings consistent with this Opinion.

¶ 20 Judgment of sentence **RE-VERSED**. Order denying suppression of evidence **REVERSED**. Case **REMAND-ED**. Jurisdiction **RELINQUISHED**.